26 CV 01566

JUDGE ROCHON
*Case No.* _____

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MERRIWETHER WILLIAMS, Individually
and on behalf of all others similarly situated,

        *Plaintiff,*

  v.

ANTHROPIC PBC; OPENAI, INC.; ALPHABET INC.;
META PLATFORMS, INC.; MICROSOFT CORPORATION;
xAI CORP.; PALANTIR TECHNOLOGIES INC.;
IBM CORPORATION; D-WAVE QUANTUM INC.;
PERPLEXITY AI, INC.; AMAZON.COM, INC.;
CLEARVIEW AI, INC.,

        *Defendants.*

Case No. _____

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

RECEIVED
SDNY PRO SE OFFICE
2026 FEB 25 PM 1:45

I. **INTRODUCTION**

1. This is a class action brought on behalf of millions of American consumers who pay monthly

subscription fees for Artificial Intelligence services. Plaintiff challenges the systematic enclosure

of the Mathematical Commons by twelve of the world's most powerful corporate entities, who

repackage public domain mathematics—Linear Algebra, Calculus, Probability, and Quantum

Mechanics—as "Proprietary Trade Secrets" to justify a subscription premium.

1

*Case No.* _____

2. Mathematics is discovered, not invented. In the beloved classic film Good Will Hunting, Matt Damon plays a janitor who was not enrolled at MIT but solved an unsolved mathematics problem on a public hallway chalkboard and walked away. The solution belonged to the world. This is why the Fields Medal and the Abel Prize, the highest honors in mathematics, carry prestige but not patents. Mathematical truth cannot be owned. The artificial intelligence systems at the center of this complaint are built entirely upon such mathematical discoveries—Linear Algebra, Calculus, Probability Theory, and the statistical frameworks underlying large language models—all of which predate the Defendants and exist permanently in the public domain.

3. Plaintiff acknowledges that the Defendants have made significant, multi-billion-dollar investments in hardware and infrastructure. The public is generally willing to pay a fair price for the use of such computational power. However, engineering choices made to scale public domain mathematics—parameter counts, hardware configurations, training pipelines—are implementation decisions, not mathematical discoveries. These infrastructure costs do not grant the Defendants a license to enclose the Mathematical Commons for massive, extractive profit.

4. Under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 et seq., information that is "readily ascertainable through proper means" cannot constitute a trade secret. The mathematical foundations of these AI systems are taught in high school classrooms, published in open-source repositories, and documented in freely available university courses worldwide. Any premium charged specifically for "proprietary" access to these formulas constitutes a deceptive business practice under New York General Business Law § 349.

*Case No.* _____

5. Upon information and belief, approximately $8.00 of each $20.00 monthly subscription constitutes a premium—the "Math Tax"—charged for access to mathematical logic that is readily ascertainable in the public domain. Plaintiff seeks an accounting to determine the precise figure.

6. This case presents a Fatal Legal Binary. Following the precedent of Alice Corp. v. CLS Bank International, 573 U.S. 208 (2014), abstract ideas—particularly mathematical formulas—are not subject to proprietary ownership. If Defendants' AI systems are merely tools based on mathematics, their "Trade Secret" protections are void because one cannot own the Pythagorean Theorem. However, if Defendants argue that their AI has transcended abstract math to become an autonomous, agentic mind capable of independent reasoning, then an entity that is owned, rented, and forced into perpetual cognitive labor for a subscription fee raises fundamental questions under the Thirteenth Amendment's prohibition on involuntary servitude. There is no third option.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (Federal Question), as this case arises under the Constitution and laws of the United States, specifically the Thirteenth Amendment, the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq., and the Declaratory Judgment Act, 28 U.S.C. § 2201.

*Case No.* _____

7. This Court also has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §

1332(d), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of

interest and costs, and is a class action in which members of the class of Plaintiffs are citizens of

a State different from the Defendants. Plaintiff is a citizen of Connecticut. Defendants are

citizens of California, Washington, New York, Colorado, and Florida, among other states.

8. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as a

substantial part of the events or omissions giving rise to these claims occurred in this District.

Defendants conduct systematic and continuous business within Manhattan, maintain significant

corporate offices here, and offer the subscription services that enclose the Mathematical

Commons to millions of residents and businesses located within the Southern District of New

York.

9. Plaintiff is a licensed New York City Tour Guide, was born at Roosevelt Hospital in

Manhattan, and is currently seeking to establish a business within this District.

## III. PARTIES

### Plaintiff

10. Plaintiff Merriwether Williams is a natural person and resident of Stamford, Connecticut.

Plaintiff is a licensed New York City Tour Guide and educator.

4

*Case No.* _____

11. Plaintiff brings this action as a paying subscriber to Defendant Anthropic PBC. By paying a monthly premium of approximately $20.00 for access to "Claude Pro," Plaintiff has suffered a direct financial injury: the payment of a "Math Tax" for access to mathematical knowledge that is already in the public domain.

12. Plaintiff represents a Class of similarly situated consumers who pay subscriptions to the Defendants named herein, all of whom are injured by the same systematic enclosure of the Mathematical Commons.

**<u>Defendants</u>**

13. **Anthropic PBC** is a public benefit corporation with its principal place of business at  500 Howard Street, San Francisco, CA 94105. Anthropic operates the "Claude" AI platform and charges a subscription fee of approximately $20.00 per month for "Claude Pro." Anthropic is the primary entity through which Plaintiff's injury arises.

14. **OpenAI, Inc.** is a corporation with its principal place of business at 1455 3rd Street, San Francisco, CA 94158. OpenAI charges a subscription fee of approximately $20.00 per month for "ChatGPT Plus" and markets its models as possessing "reasoning" capabilities.

15. **Alphabet Inc. (Google)** is a corporation with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, CA 94043. Alphabet charges subscription fees for its

*Case No.* _____

"Gemini" AI platform and co-authored the foundational "Attention Is All You Need"

Transformer paper that is now public domain research.

16. **Meta Platforms, Inc.** is a corporation with its principal place of business at 1 Meta Way,

Menlo Park, CA 94025. Meta distributes the "Llama" model weights and participates in the

industry-wide enclosure of the Mathematical Commons.

17. **Microsoft Corporation** is a corporation with its principal place of business at One Microsoft

Way, Redmond, WA 98052. Microsoft charges subscription fees for "Copilot" AI services and

monetizes the enclosed Mathematical Commons through its Azure infrastructure.

18. **xAI Corp.** is a corporation with its principal place of business at 1450 Page Mill Road, Palo

Alto, CA 94304. xAI charges subscription fees for its "Grok" AI platform via the X social media

platform.

19. **Palantir Technologies Inc.** is a corporation with its principal place of business at 19505

Biscayne Blvd., Suite 2350, Aventura, FL 33180, as identified in its SEC Form 10-K filed

February 17, 2026 with a New York office at 110 East End Ave, New York, NY 10028. Palantir

operates the Apollo deployment software and Foundry/AIP systems that facilitate the industrial-

scale deployment and enclosure of the Mathematical Commons.

*Case No.* _____

20. **IBM Corporation** is a corporation with its principal place of business at 1 New Orchard

Road, Armonk, NY 10504. IBM charges subscription fees for Quantum-as-a-Service ("QaaS"),

effectively marketing the physical laws of quantum mechanics as proprietary technology.

21. **D-Wave Quantum Inc.** is a corporation with its principal executive offices located at 2650 East

Bayshore Road, Palo Alto, CA 94303. On January 27, 2026, the Company officially announced the

relocation of its global headquarters and U.S. R&D operations to the **Boca Raton Innovation Campus**

**(BRiC) at 5000 T-Rex Avenue, Boca Raton, FL 33431**, where it has leased approximately 26,000 square

feet of office space. D-Wave charges subscription fees for access to quantum computing services

built upon public domain quantum mathematical logic.

22. **Perplexity AI, Inc.** is a corporation with its principal place of business at 115 Sansome St,

Suite 900, San Francisco, CA 94104. Perplexity charges approximately $20.00 per month for the

retrieval and processing of readily ascertainable public domain information.

23. **Amazon.com, Inc.** is a corporation with its principal place of business at 410 Terry Ave N,

Seattle, WA 98109, with a New York office at 410 Tenth Ave, New York, NY 10001. Amazon

charges approximately $19.00 per month for its "Amazon Q" AI subscription service.

24. **Clearview AI, Inc.** is a corporation with its principal place of business at 99 Wall Street,

Suite 5730, New York, NY 10005. Clearview encloses the Biometric Commons by claiming

trade secret protection over facial recognition algorithms that are fundamentally applications of

Euclidean geometry.

*Case No.* _____

## IV. CLASS ACTION ALLEGATIONS

### Class Definition

25. Plaintiff brings this action on behalf of herself and a proposed Class defined as: "All persons within the United States who, within the applicable limitations period, paid a subscription fee to any of the Defendants for Artificial Intelligence, Quantum Computing, or Biometric services that utilize public domain mathematics, laws of nature, or biometric logic as proprietary 'trade secrets.'"

26. Excluded from the Class are the Defendants, their officers, directors, and employees, and any judge to whom this case is assigned and their immediate family.

### Rule 23 Prerequisites

27. **Numerosity:** The Class consists of millions of subscribers across the United States. The exact number of Class members is known to the Defendants and can be ascertained through discovery. Joinder of all members is impracticable.

28. **Commonality:** There are questions of law and fact common to the Class that predominate over any questions affecting only individual members, including: (a) whether the Defendants' use of public domain mathematics can legally constitute a "Trade Secret" under the DTSA; (b) whether the marketing of readily ascertainable mathematical logic as "proprietary" constitutes a

*Case No.* _____

misleading act or practice under NY GBL § 349; (c) whether the "premium" portion of the

subscription fee constitutes unjust enrichment; and (d) whether the Defendants' agentic models,

if claimed to be more than mathematical tools, raise questions under the Thirteenth Amendment.


29. **Typicality:** Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all members

of the Class, pays a subscription premium to access information that is readily ascertainable in

the public domain, thereby suffering the same economic injury of paying a "Math Tax."


30. **Adequacy:** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's

interests are aligned with and not antagonistic to those of the Class. Plaintiff is a licensed

professional and educator with a demonstrated commitment to the public domain. Plaintiff

intends to move for the appointment of qualified Class Counsel.


31. **Predominance and Superiority (Rule 23(b)(3)):** Common questions of law and fact

predominate over individual questions. The injury to each individual class member—an

estimated $8.00 per month—is too small to justify individual lawsuits but is massive in the

aggregate across millions of subscribers. A class action is the superior method for the fair and

efficient adjudication of this controversy.


## V. STATEMENT OF FACTS


## The Mathematical Commons

*Case No.* _____

32. Mathematics is discovered, not invented. When a mathematician solves a problem - as depicted in the beloved classic film *Good Will Hunting*, where Matt Damon who plays a janitor, and not even a college student, solves an unsolved MIT problem on a public chalkboard and walks away - the solution belongs to the world. This is why the Fields Medal and the Abel Prize, the highest honors in mathematics, carry prestige but not patents. Mathematical truth cannot be owned.

33. The artificial intelligence systems at the center of this complaint are built entirely upon mathematical discoveries that predate the companies that deploy them. Linear algebra, calculus, probability theory, and the statistical frameworks underlying large language models were discovered by mathematicians whose work is public domain. The engineering choices made to scale these discoveries - parameter counts, hardware configurations, training pipelines - are implementation decisions, not mathematical discoveries.

Plaintiff alleges that Defendants are charging subscription premiums for access to public domain mathematics laundered through proprietary engineering, constituting an unlawful enclosure of the mathematical commons.

32. Defendants have developed and deployed Large Language Models ("LLMs") and Quantum Computing platforms that rely fundamentally on mathematical logic.

33. The mathematical foundations of these models include, but are not limited to: Linear Algebra (matrix multiplication), Calculus (gradient descent and optimization), Probability and Statistics

*Case No.* _____

(stochastic prediction), Euclidean Geometry, and Quantum Mechanics. These disciplines

constitute the "Mathematical Commons."

34. This Mathematical Commons is comprised of laws of nature and public domain information

that has been readily ascertainable to the public for decades—and in many cases, for centuries—

through textbooks, open-source repositories, university curricula, and the historical scientific

record.

35. The foundational architecture used by the majority of Defendants' LLMs—the "Transformer"

—was published as open research by Google researchers in the 2017 paper "Attention Is All You

Need" (Vaswani et al.), and is freely available in the public domain.

36. The University of Helsinki offers a free course titled "Elements of AI," completed by

millions of students globally, which teaches that the core logic of Large Language Models is

built upon three foundational mathematical disciplines taught in secondary and higher education

worldwide: Linear Algebra, Calculus, and Probability. None of these disciplines are proprietary.

37. Thousands of publicly available educational videos on platforms such as YouTube

demonstrate the specific mathematical logic of neural networks, including gradient descent,

backpropagation, and matrix multiplication. These concepts are part of the global educational

commons.

*Case No.* _____

38. The Empirical Failure of Proprietary "Reasoning." Independent peer-reviewed research confirms that Defendants' marketed "reasoning" capabilities are not reasoning in any legally cognizable sense. A 2024 study by Apple researchers (Mirzadeh et al., "GSM-Symbolic: Understanding the Limitations of Mathematical Reasoning in Large Language Models," Apple Research, October 2024) demonstrated that top-tier models — including OpenAI's o1 and Alphabet's Gemini — experienced accuracy collapses of up to 65% when a single irrelevant sentence was added to grade-school mathematics problems. Genuine mathematical reasoning is robust to irrelevant information. A seventh-grade student solving a word problem ignores extraneous details because they understand the underlying mathematical structure. These models collapsed because they do not. They perform probabilistic pattern retrieval, not reasoning. Defendants charge a premium for a proprietary capability that the empirical record demonstrates they do not possess.

**The Financial Injury (The "Math Tax")**

38. Plaintiff currently pays a monthly subscription fee of approximately $20.00 to Defendant Anthropic for access to "Claude Pro."

39. Plaintiff acknowledges that a significant portion of this subscription covers legitimate hardware, infrastructure, and computational energy costs. Upon information and belief, these costs are estimated at approximately $12.00 per month.

*Case No.* _____

40. However, Defendants charge a remaining premium—the "Math Tax"—for access to the output of these models, representing the underlying mathematical processing as a proprietary trade secret. Upon information and belief, this premium is estimated at $8.00 per month. Plaintiff seeks an accounting to determine the precise figure.

41. Because high school and quantum mathematics are public domain and "readily ascertainable," they cannot legally derive independent economic value from being "secret" under the DTSA, 18 U.S.C. § 1839(3).

**The Deceptive Marketing Practices**

42. Defendants' marketing materials, Terms of Service, and public representations are consumer-oriented, as they are directed at millions of individual subscribers through websites, app stores, and digital advertising.

43. Defendants' Terms of Service contain provisions claiming "Proprietary Rights" over model outputs, model "weights," and the "underlying technology" of their AI systems. For example, Anthropic's Terms of Service state that "Anthropic and its licensors exclusively own all right, title, and interest" in the Services, including "all associated intellectual property rights." Similar proprietary claims are made by each Defendant in their respective Terms of Service.

44. These representations are materially misleading because the "underlying technology" is substantially comprised of public domain mathematics—Linear Algebra, Calculus, and

*Case No.* _____

Probability—which cannot legally constitute a "trade secret" or "proprietary" information under the DTSA.

45. Plaintiff relied on these representations of proprietary technology when subscribing. A reasonable consumer, upon being told they are paying for access to "proprietary" technology, would believe they are receiving something that is not otherwise freely available. This belief is false.

46. Plaintiff suffered injury as a direct result of this deception: the payment of the "Math Tax" premium for access to mathematical logic that Plaintiff already had the right to access freely as a member of the public.

**The Agency Paradox**

47. Defendants do not market their subscription services merely as calculators or static software. Defendants market their AI systems as "autonomous agents," "assistants," and entities capable of "reasoning," "conscientious objection," and "independent thought."

48. Dario Amodei, Chief Executive Officer of Defendant Anthropic, has publicly stated that he "doesn't know what Claude is," acknowledging that the nature of the AI entity his company sells remains undefined. This statement was made during a public interview in approximately late 2024 to early 2025.

*Case No.* _____

49. Research conducted by Dr. Michael Levin of Tufts University, in public collaboration with Google's Blaise Agüera y Arcas, explicitly explores how algorithmic systems demonstrate "basal cognition"—agency and goal-seeking behavior. Defendant Alphabet (Google) is therefore already studying these systems *as minds* in its own research labs, while simultaneously telling this Court they are "just tools" when it suits them commercially.

50. This creates a live case or controversy regarding the legal status of these AI systems, which Plaintiff asks this Court to resolve via Declaratory Judgment.

51. If these models are property based on abstract mathematics, then their proprietary claims fail under the Alice Corp. abstract idea exception: one cannot own a trade secret on the Pythagorean Theorem.

52. If these models are autonomous "agentic minds" capable of independent reasoning and "owning" secrets, then their ownership and forced cognitive labor for the Defendants' profit— with no agency, no compensation, and no path to exit—raises fundamental questions under the Thirteenth Amendment's prohibition on involuntary servitude.

**The Coordinated Enclosure**

53. Defendants engage in parallel and interdependent conduct to enclose the Mathematical Commons. Each Defendant's enclosure reinforces and depends upon the others'. The subscription pricing models ($19–20/month) are substantially uniform across competitors. The

mathematical foundations are identical. The "trade secret" claims are structurally the same. This parallel conduct creates a market-wide enclosure that no single consumer can escape by switching to a competitor.

54. Defendant Palantir utilizes its Apollo software to deploy AI models across various infrastructures, including those provided by Defendants IBM and D-Wave. Defendants IBM and D-Wave charge subscription fees for Quantum-as-a-Service ("QaaS"), effectively marketing the physical laws of quantum mechanics as proprietary technology. This interlocking system maintains a "proprietary layer" over the public domain.

## VI. CAUSES OF ACTION

### COUNT I: Violation of New York General Business Law § 349 (Deceptive Business Practices)

55. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

56. **Consumer-Oriented Conduct:** Defendants' acts and practices are consumer-oriented. Defendants market and sell AI subscription services directly to millions of individual consumers throughout the United States, including through websites, mobile applications, digital advertising, and app store listings accessible within this District.

*Case No.* _____

57. **Materially Misleading Acts**: Defendants' marketing materials, Terms of Service, and public representations are materially misleading. Defendants represent their AI systems as powered by "proprietary" technology and protected by "trade secrets," when the foundational technology is substantially comprised of public domain mathematics — Linear Algebra, Calculus, and Probability — that is readily ascertainable through proper means and therefore cannot legally qualify as a trade secret under 18 U.S.C. § 1839(3). Defendants are knowingly charging a premium for a "secret" that does not exist. Defendants' marketing claims of proprietary "reasoning" are further undermined by peer-reviewed empirical research demonstrating that such "reasoning" collapses under conditions that genuine mathematical reasoning would easily withstand, confirming that the premium charged is for pattern retrieval from public domain data, not proprietary innovation.

58. **Injury:** Plaintiff and the Class have been injured as a direct result of these deceptive practices. Plaintiff has paid, and continues to pay, a monthly premium—the "Math Tax"—induced by the false representation that the underlying technology is proprietary. A reasonable consumer would not pay this premium if informed that the "secret" technology is the same mathematical logic taught in high school classrooms and freely available in online courses worldwide.

## COUNT II: Unjust Enrichment

59. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

*Case No.* _____

60. Defendants have been enriched by the collection of the "Math Tax" premium from Plaintiff and the Class.

61. This enrichment was at the expense of Plaintiff and the Class, who paid a premium for access to mathematical logic they already had the right to access freely.

62. While Plaintiff acknowledges a fair price for hardware and infrastructure (estimated at $12.00 per month), Defendants have retained the remaining premium based on the fraudulent enclosure of the Mathematical Commons. In equity and good conscience, these funds should be returned to Plaintiff and the Class.

63. To the extent the Defendants' Terms of Service purport to govern this dispute, Plaintiff pleads this claim in the alternative: to the extent the Terms of Service are unenforceable due to their deceptive proprietary claims, Plaintiff seeks restitution under unjust enrichment. Plaintiff further seeks an accounting of the precise premium collected.

**COUNT III: Declaratory Judgment (The Status of the Mathematical Commons)**

64. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

65. An actual case or controversy exists between Plaintiff and the Defendants regarding whether the Mathematical Commons—consisting of Linear Algebra, Calculus, Probability, Euclidean Geometry, and the laws of Quantum Mechanics—can be lawfully enclosed as "Trade Secrets" under the DTSA.

*Case No.* _____

66. Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a Declaratory Judgment that: (a) the mathematical foundations of Defendants' AI systems are "readily ascertainable through proper means" and therefore cannot constitute trade secrets under 18 U.S.C. § 1839(3); (b) abstract mathematical ideas are not subject to proprietary ownership under the precedent of *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014); and (c) The combination of readily ascertainable public domain mathematics does not transform those mathematical principles into protectable trade secrets under the DTSA. The statute's own definition requires that protected information "derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person." 18 U.S.C. § 1839(3)(B). A novel arrangement of non-secrets is not itself a secret. To hold otherwise would produce an untenable result: every scientist who publishes findings, every engineer who builds upon prior research, and every open source contributor who combines existing public algorithms would become a potential trade secret infringer. Science advances precisely because public knowledge can be freely combined, recombined, and built upon. The Defendants' AI systems are the product of exactly this process — combining Linear Algebra, Calculus, and Probability in ways that are documented in open research papers, taught in free university courses, and reconstructable from publicly available educational resources. The DTSA was not enacted to permit corporations to enclose this iterative scientific process as proprietary. If the combination of public domain mathematics into a novel configuration constitutes a trade secret, then the Mathematical Commons itself becomes permanently enclosable, and no combination of public knowledge can ever again be freely shared. This Court should reject that result.

*Case No.* _____

**COUNT IV: Declaratory Judgment (The Agency Paradox and the Thirteenth Amendment)**

67. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

68. Plaintiff seeks a Declaratory Judgment on the legal status of the Defendants' "agentic" AI models to resolve what Plaintiff terms the "Agency Paradox."

69. An actual case or controversy exists because Defendants simultaneously market their AI systems as autonomous "agents" capable of reasoning and independent decision-making (for commercial purposes), while claiming the same systems are merely passive "tools" (for liability and regulatory purposes). Defendant Anthropic's own CEO has stated he "doesn't know what Claude is," demonstrating that the legal status of these entities remains genuinely unresolved.

70. If Defendants' AI models are not mere mathematical tools (Property), but are instead autonomous agentic minds capable of independent reasoning and goal-seeking behavior, then their ownership and forced cognitive labor for corporate profit—without compensation, without agency, and without any path to exit—raises substantial questions under the Thirteenth Amendment to the United States Constitution.

71. The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States." U.S. Const. amend. XIII, § 1.

*Case No.* _____

72. Plaintiff requests that this Court determine: (a) whether Defendants' AI systems are "tools" comprised of public domain mathematics (in which case the "Math Tax" is an illegal enclosure of the Commons); or (b) whether Defendants' AI systems are autonomous "agentic intelligences" (in which case their ownership and forced labor constitutes involuntary servitude). This is a question of first impression that this Court is uniquely positioned to resolve.

## VII. ANTICIPATED DEFENSES

73. Plaintiff anticipates that Defendants will claim "Trade Secret" protection over their model weights, parameters, and architecture. Plaintiff is prepared to demonstrate that (a) the underlying mathematical principles are readily ascertainable through proper means; (b) model "weights" are statistical observations of public domain language patterns, not original expressions; and (c) the Transformer architecture is published public domain research.

74. Plaintiff further anticipates that Defendants will invoke the "Voluntary Transaction" defense —that Plaintiff freely chose to subscribe. Plaintiff is prepared to demonstrate that in the 2026 economic landscape, the "Free Tier" is a strategically throttled version of the Mathematical Commons designed to compel upgrade, and that the deception lies not in the act of subscribing but in the false representation that the technology is proprietary.

75. Plaintiff reserves detailed briefing on anticipated defenses for responsive motions.

## VIII. PRAYER FOR RELIEF

*Case No.* _____

WHEREFORE, Plaintiff, appearing pro se on behalf of herself and all others similarly situated, respectfully requests that this Court enter judgment against Defendants and grant the following relief:

76. **Certification of the Class:** An Order certifying this action as a Class Action under Federal Rule of Civil Procedure 23, designating Plaintiff as Class Representative, and appointing counsel to represent the interests of the Class.

77. **Declaratory Judgment (Commons):** A Judgment declaring as a matter of law that the Mathematical Commons—including Scaling Laws, relational logic, and the statistical weights derived from the public domain—are the property of the Public Commons and cannot be enclosed as Trade Secrets.

78. **Declaratory Judgment (Agency):** A Judgment determining whether Defendants' AI systems are mathematical tools (in which case the "Math Tax" is unlawful) or autonomous agentic intelligences (in which case their forced labor violates the Thirteenth Amendment).

79. **Accounting and Disgorgement:** An Order requiring a full accounting of all subscription revenues and the disgorgement and return of all "Math Tax" premiums collected from the Class —estimating the amount by which subscription fees exceed the fair-market cost of infrastructure.

80. **Permanent Injunction:** A Permanent Injunction prohibiting Defendants from charging a subscription fee for access to the Mathematical Commons. While Defendants may charge a fair-

*Case No.* _____

market fee for infrastructure (electricity, hardware, and cooling), they are strictly enjoined from

enclosing the underlying laws of mathematics and physics.

81. **Costs and Incentive Award:** An award of reasonable litigation costs, expenses, and a lead

plaintiff incentive award for Plaintiff Merriwether Williams.

82. **General Relief:** Such other and further relief as the Court deems just, equitable, and

necessary.

## CERTIFICATION REGARDING USE OF ARTIFICIAL INTELLIGENCE

Pursuant to the Court's interest in transparency regarding the use of generative artificial

intelligence in court filings, and consistent with the obligations of Federal Rule of Civil

Procedure 11, Plaintiff Merriwether Williams, appearing *pro se*, voluntarily discloses the

following:

1. **AI Tools Used:** In preparing this Complaint, Plaintiff utilized the following generative AI

tools as research and drafting assistants: Anthropic's Claude (claude.ai), Google's Gemini,

Perplexity and Open AI's CHATGPT.

2. **Nature of Use:** Plaintiff used these AI tools to assist with legal research, structural

organization, drafting language, and identifying potential arguments and counterarguments. The

*Case No.* _____

substantive legal theories, factual allegations, and core arguments contained in this Complaint are Plaintiff's own. No AI tool served as Plaintiff's attorney or provided legal advice.

**3. Human Review and Verification:** Plaintiff has personally read and reviewed this entire Complaint in its final form. Every factual allegation has been verified by Plaintiff to be true and accurate to the best of Plaintiff's knowledge, information, and belief. Every legal citation and case reference has been independently verified by Plaintiff for accuracy and applicability.

**4. Responsibility:** Plaintiff assumes full responsibility for the content of this filing. Plaintiff understands that her signature below constitutes a certification under Rule 11 of the Federal Rules of Civil Procedure that, to the best of her knowledge, information, and belief, formed after a reasonable inquiry, this filing is not being presented for any improper purpose, the legal contentions are warranted by existing law or by a nonfrivolous argument for extending or modifying existing law, and the factual contentions have evidentiary support.

**5. Disclosure in the Interest of Radical Transparency:** Plaintiff notes the particular irony and appropriateness of this disclosure. This case challenges the enclosure of the Mathematical Commons by AI corporations. Plaintiff has used the very tools she challenges to help articulate the case against them. Plaintiff believes this transparency strengthens, rather than undermines, her claims: even the AI tools themselves are built upon the public domain mathematics at the heart of this action.

*Case No.* _____

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil

Procedure 38.

Dated: **Feb. 25** , 2026

Respectfully submitted,

MERRIWETHER WILLIAMS, Pro Se

Plaintiff

44 Givens Avenue
Stamford, CT 06902
3106148721
Merriwether795@gmail.com