**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

**MERRIWETHER WILLIAMS,**

**Plaintiff,**

**v.**

**ANTHROPIC PBC, ET AL.,**

**Defendants.**

**Case No. 1:26-cv-01566-DEH-SDA**

# DEFENDANT ALPHABET INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

I. BACKGROUND ........ 1

II. LEGAL STANDARDS ........ 2

1. Rule 12(b)(1) – Subject-Matter Jurisdiction ........ 2

2. Rule 12(b)(6) – Failure to State a Claim ........ 2

III. ARGUMENT ........ 3

A. THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS AGAINST ALPHABET BECAUSE PLAINTIFF LACKS STANDING ........ 3

B. THE COMPLAINT DOES NOT STATE A PLAUSIBLE CLAIM AS REQUIRED BY 12(b)(6). ........ 4

C. PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349 (COUNT I). ........ 6

1. Plaintiff Alleges No Injury Attributable to Alphabet. ........ 6

2. Plaintiff Has Not Identified Any Materially Misleading Alphabet Statement. 7

3. GBL § 349 Does Not Impose a Duty to Disclose That Products Are Built on Publicly Known Scientific Principles. ........ 8

D. PLAINTIFF FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT (COUNT II). ........ 9

1. Plaintiff Paid Nothing to Alphabet. ........ 9

2. Plaintiff's Data Provision Does Not Constitute Unjust Enrichment. ........ 9

3. The Parties' Relationship Is Governed by Contract. ........ 10

4. Plaintiff Received the Benefit She Was Offered. ........ 10

E. PLAINTIFF FAILS TO STATE A CLAIM FOR DECLARATORY JUDGMENT ON ANY THEORY (COUNTS III AND IV). ........ 10

1. Count III Fails Because the Defend Trade Secrets Act Provides No Basis for Consumer Declaratory Relief and Is Not Ripe. ........ 11

2. Count IV Is Non-Justiciable and Legally Frivolous. ........ 12

IV. DISMISSAL WITH PREJUDICE IS WARRANTED BECAUSE AMENDMENT WOULD BE FUTILE ........ 13

V. CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. v. CLS Bank International*,
573 U.S. 208 (2014) .......... 11

*Amusement Indus., Inc. v. Midland Ave. Assocs.*,
LLC, 820 F. Supp. 2d 510 (S.D.N.Y. 2011) .......... 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 2

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 2

*Cruz v. TD Bank, N.A.*,
855 F. Supp. 2d 157 (S.D.N.Y. 2012) .......... 9

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) .......... 4

*DeMarco v. DNVB, Inc.*,
2026 WL 203742 (S.D.N.Y. Jan. 26, 2026) .......... 8

*Goodrich Cap., LLC v. Vector Cap. Corp.*,
2012 WL 4123401 (S.D.N.Y. June 26, 2012) .......... 13

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 2, 3

*Micheli & Shel, LLC v. Grubhub Inc.*,
2023 WL 2390540 (S.D.N.Y. Mar. 7, 2023) .......... 10

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
85 N.Y.2d 20 (1995) .......... 6, 7, 9

*Owoyemi v. Credit Corp. Sols. Inc.*,
596 F. Supp. 3d 514 (S.D.N.Y. 2022) .......... 13

*Phillips v. Aviles-Ramos*,
2025 WL 934342 (S.D.N.Y. Mar. 27, 2025), *reconsideration denied*, 2025 WL 1547490 (S.D.N.Y. May 29, 2025) .......... 11

*S.G. v. Bank of China U.S.A.*,
2024 WL 4891390 (2d Cir. Nov. 26, 2024) .......... 5

*Soule by Stanescu v. Connecticut Ass'n of Schs., Inc.*,
57 F.4th 43 (2d Cir. 2022) ..... 4

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ..... 2

*Stutman v. Chemical Bank*,
95 N.Y.2d 24 (2000) ..... 6

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ..... 12

*Xu v. Reuters News & Media Inc.*,
2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) ..... 3

**Statutes**

18 U.S.C. § 1839(3) ..... 11

35 U.S.C. § 101 ..... 11

Declaratory Judgment Act ..... 1

Defend Trade Secrets Act ..... passim

New York General Business Law § 349 ..... 1, 6

**Other Authorities**

Fed. R. Civ. P. 8(a) ..... 4, 5

Fed. R. Civ. P. 12(b)(1) ..... 1, 2, 14

Fed. R. Civ. P. 12(b)(6) ..... 1, 2, 4, 5

Defendant Alphabet Inc. ("Alphabet") hereby moves to dismiss the First Amended Complaint ("FAC") (Doc. 40) of *pro se* Plaintiff Merriwether Williams ("Plaintiff") in its entirety, with prejudice. Alphabet moves for dismissal on two grounds: 1) the Court lacks subject matter jurisdiction and dismissal is therefore appropriate pursuant to Fed. R. Civ. P. 12(b)(1); and 2) the Complaint fails to state any claim upon which relief can be granted and dismissal is therefore also appropriate pursuant to Fed. R. Civ. P. 12(b)(6).

## I. BACKGROUND

Plaintiff Merriwether Williams, proceeding *pro se*, claims each Defendants' description of artificial intelligence products as "proprietary" is a deceptive business practice because the mathematical disciplines underlying those products are available in the public domain. On that basis, the FAC asserts four causes of action against Alphabet: (1) violation of New York General Business Law § 349 ("GBL § 349"); (2) unjust enrichment; (3) declaratory judgment regarding the "Mathematical Commons" (Count III); and (4) declaratory judgment regarding the "Agency Paradox" and the Thirteenth Amendment (Count IV). Each claim fails at the threshold for lack of Article III standing and, independently, for failure to state a cognizable claim.

The dispositive deficiency runs through every count: Plaintiff is a paying subscriber to Defendant Anthropic PBC and has paid a monthly premium of approximately $20.00 for access to "Claude Pro," suffering what she characterizes as a direct financial injury — the payment of a "Math Tax" for access to mathematical knowledge that she contends is already in the public domain. With Alphabet, by contrast, Plaintiff has merely used Google's Gemini platform and obtained a Google AI Essentials Credential (No. 4MIL9QG2LT6M) via Google/Coursera. Absent any payment to Alphabet, Plaintiff has no concrete financial injury traceable to Alphabet, no basis to seek disgorgement from Alphabet of money she paid to a different company for a different product, and no concrete controversy with Alphabet sufficient to invoke the Declaratory Judgment

Act. Moreover, even if she had standing, her claims are simply not plausible as software that employs generally available math is not also, *ipso facto*, non-proprietary (as this would mean all software is unprotectible as math runs every computer program).

## II. LEGAL STANDARDS

### 1. Rule 12(b)(1) – Subject-Matter Jurisdiction

A case must be dismissed under Rule 12(b)(1) when the plaintiff lacks Article III standing. To establish standing, a plaintiff must demonstrate (1) a concrete and particularized injury-in-fact that is actual or imminent; (2) a causal connection between the injury and the defendant's challenged conduct; and (3) redressability — a likelihood that the requested relief will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Each element must be supported by specific factual allegations and cannot rest on conjecture or inference. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016). The party invoking federal jurisdiction bears the burden of establishing standing. *Id.* at 338.

### 2. Rule 12(b)(6) – Failure to State a Claim

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible only when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are insufficient. Id. The Court is not required to accept as true legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

## III. ARGUMENT

### A. THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS AGAINST ALPHABET BECAUSE PLAINTIFF LACKS STANDING

Article III standing demands a concrete injury that is "fairly traceable" to the defendant's challenged conduct. *Lujan*, 504 U.S. at 560. The FAC fails this requirement as to Alphabet.

The financial injury Plaintiff identifies throughout the FAC is the payment of a $20.00 monthly subscription fee to Defendant Anthropic PBC for "Claude Pro." Plaintiff acknowledges that this subscription covers hardware and infrastructure costs and that the purported "Math Tax" premium she seeks to recover — estimated at $8.00 per month — is embedded in that Anthropic subscription. Nowhere in the FAC does Plaintiff allege that she paid Alphabet anything.

Plaintiff's only alleged connection to Alphabet is that she used Google's Gemini platform and obtained a Google AI Essentials Credential, which she characterizes as demonstrating a "direct consumer relationship" with Alphabet, and that she provided personal data and usage patterns through Alphabet's products. None of these allegations establishes an economic injury traceable to Alphabet. The FAC does not plausibly allege that Plaintiff suffered any economic injury from her use of Gemini, nor does it plead any facts showing that Alphabet's collection or use of her data caused a concrete financial loss. The receipt of a free educational credential is not a financial injury. The incidental provision of data through voluntary platform use pursuant to a Terms of Service agreement, without any allegation that Alphabet's use of that data exceeded what was disclosed or agreed to, does not constitute the kind of concrete, quantified pecuniary harm that Article III requires. *Xu v. Reuters News & Media Inc.*, 2025 WL 488501, at *3-4 (S.D.N.Y. Feb. 13, 2025). Plaintiff cannot manufacture standing to sue Alphabet by pointing to a subscription payment she made to a different defendant for a different product.

Standing also requires redressability: the injury must be "likely to be redressed by the requested relief." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (internal citation omitted). Plaintiff's alleged economic injury is the payment of the "Math Tax" to Anthropic. She seeks disgorgement of that premium. Even if the Court were to grant the disgorgement Plaintiff requests, a disgorgement order against Alphabet would not return a single dollar to Plaintiff, because Plaintiff never paid Alphabet a dollar. Plaintiff's alleged injury and her requested monetary relief against Alphabet are completely disconnected. This is a particularly clean redressability defect that independently defeats standing on all counts. *Soule by Stanescu v. Connecticut Ass'n of Schs., Inc.*, 57 F.4th 43, 51 (2d Cir. 2022).

### B. THE COMPLAINT DOES NOT STATE A PLAUSIBLE CLAIM AS REQUIRED BY 12(b)(6).

Even if the Court were to find that Plaintiff has standing — and it should not — each count independently fails on the merits.

Before reaching the elements of any individual claim, the FAC fails the fundamental requirement of fair notice of the specific conduct attributed to Alphabet. As discussed in *Twombly*, Federal Rule of Civil Procedure 8(a) (and therefore Rule 12(b)(6) as well) requires that a complaint provide "a short and plain statement of the claim" giving the defendant fair notice of what the claim is and the grounds upon which it rests. 550 U.S. at 555 (internal quotations omitted). The FAC, however, names twelve unrelated defendants and attributes the alleged deceptive conduct collectively to "Defendants," pleading that they use the word "proprietary" in marketing materials and Terms of Service, and that they have never disclosed that the underlying mathematics is in the public domain. In short, the FAC does not identify specifically what Alphabet supposedly did wrong here, and just assumes all the Defendants did the same thing. This collective pleading is

insufficient under Rules 8(a) and 12(b)(6). *S.G. v. Bank of China U.S.A.*, 2024 WL 4891390, at *1 (2d Cir. Nov. 26, 2024).

The FAC does not identify a single specific Alphabet advertisement, marketing communication, Terms of Service provision, or educational material that she personally encountered and that falsely represented publicly available mathematics as proprietary information. The only Alphabet-specific conduct alleged is that Plaintiff used Gemini and obtained a Google AI Essentials Credential. The FAC's omission theory — that Defendants collectively never disclosed that their underlying mathematics is in the public domain — is asserted against all twelve defendants as a group, without identifying any specific Alphabet communication, disclosure, or omission that Plaintiff personally encountered. Group pleading against twelve unrelated defendants does not satisfy *Iqbal* and *Twombly* as to any individual defendant, including Alphabet.

Finally, under the most liberal reading of the FAC, Plaintiff's claims fail as a matter of law for an independent and fundamental reason: the fact that a commercial software product employs publicly known mathematical principles does not render it non-proprietary, and cannot render false or misleading a representation that the resulting product is proprietary. Every software program ever written — from word processors to GPS navigation systems to banking applications — executes publicly known mathematical and computational operations. Under Plaintiff's theory, no software product could ever be described as proprietary, because all software ultimately reduces to mathematics. That sweeping proposition has no basis in law. It is sufficient at this stage to note that this threshold legal defect infects every count of the FAC and independently warrants dismissal under Rule 12(b)(6).

### C. PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349 (COUNT I).

To state a claim under GBL § 349, a plaintiff must plausibly allege: (1) the defendant engaged in consumer-oriented conduct; (2) the conduct was materially misleading; and (3) the plaintiff suffered injury as a result. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995). Plaintiff's GBL § 349 claim against Alphabet fails on the second and third elements.

#### 1. Plaintiff Alleges No Injury Attributable to Alphabet.

GBL § 349 requires a plaintiff to plead "actual injury" causally linked to the alleged deception. *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000). The injury Plaintiff alleges throughout the FAC is the payment of a $20.00 monthly subscription fee to Defendant Anthropic PBC for "Claude Pro." (FAC ¶¶ 13, 57.) Plaintiff attributes approximately $8.00 of that fee to the so-called "Math Tax." (FAC ¶ 5.)

Plaintiff's relationship with Alphabet is different in kind. She alleges only that she "used" Alphabet's Gemini platform and holds a "Google AI Essentials Credential" obtained via Google/Coursera, "demonstrating a direct consumer relationship with Defendant Alphabet Inc." (FAC ¶ 14.) Conspicuously absent from the FAC is any allegation that Plaintiff ever paid Alphabet a subscription fee, let alone that she paid Alphabet a premium attributable to any allegedly deceptive representation. A credential obtained through an educational course—without any allegation of payment for a premium AI subscription—does not establish the financial injury GBL § 349 requires. Plaintiff cannot satisfy the causation element of § 349 by pointing to payments she made to a different defendant for a different product.

**2. Plaintiff Has Not Identified Any Materially Misleading Alphabet Statement.**

Even setting aside the absence of any injury attributable to Alphabet, Plaintiff fails to plausibly allege that Alphabet made a materially misleading statement. GBL § 349 targets conduct that is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego*, 85 N.Y.2d at 26. The standard is an objective one.

The FAC does not identify a single false factual representation made by Alphabet. The FAC's theory of deception is leveled at "Defendants" collectively — that they use the word "proprietary" and specialized technical terminology to create a false impression that their products are built on novel mathematical discoveries, when the underlying mathematics is in the public domain. That is a group allegation; it is not an Alphabet-specific allegation. A plaintiff pressing a GBL § 349 claim cannot satisfy the misleading-conduct element by alleging that twelve unrelated companies collectively use ordinary commercial language.

Moreover, Plaintiff's theory about the word "proprietary" is legally insufficient on its own terms. Plaintiff herself acknowledges that Defendants have made "significant, multi-billion-dollar investments in hardware and infrastructure" and that "engineering choices made to scale public domain mathematics — parameter counts, hardware configurations, training pipelines — are implementation decisions." These concessions are fatal to the GBL § 349 claim. A finished AI system that incorporates proprietary training pipelines, model weights, deployment mechanisms, fine-tuning methods, safety infrastructure, and billions of dollars of accumulated engineering choices is accurately described as proprietary in its implementation. Plaintiff's own allegations independently defeat any claim that describing Gemini as proprietary is false or misleading. No reasonable consumer would read Alphabet's marketing materials as a representation that the company's AI systems consist of nothing more than what is taught in a high school mathematics class. Plaintiff confuses the components with the product.

### 3. GBL § 349 Does Not Impose a Duty to Disclose That Products Are Built on Publicly Known Scientific Principles.

The FAC relies heavily on an alleged omission: the failure to disclose that the mathematical foundations of AI products are in the public domain. Defendants purportedly rebranded public-domain concepts — "high school calculus as 'backpropagation,' coordinate geometry as 'vector embeddings,' and slope calculation as 'stochastic gradient descent'" — to create a false impression of novelty.

GBL § 349 omission claims do not require a defendant to disclose that products are built on publicly known scientific principles. Automobile manufacturers use Newtonian mechanics but are under no obligation to remind consumers that Sir Isaac Newton predates the Ford Motor Company. GPS navigation systems rely on publicly known physics but do not carry disclosures informing purchasers that Einstein's theories of relativity are freely available. Semiconductor manufacturers apply publicly known principles of electrical theory without being required to disclose that Ohm's Law is in the textbooks. No reasonable consumer expects manufacturers of complex technology products to affix disclaimers confirming that the scientific principles their products apply are publicly known. The failure to include such a disclosure is not a material omission. *DeMarco v. DNVB, Inc.*, 2026 WL 203742, at *5 (S.D.N.Y. Jan. 26, 2026).

Furthermore, the "omission" Plaintiff identifies is not material under the objective reasonable-consumer standard. As understood by Alphabet, the FAC's omission theory is that Alphabet's Google AI Essentials course teaches prompt engineering and responsible use but does not disclose that the underlying mathematics powering its AI systems is public domain knowledge. A consumer enrolling in a product-specific educational course offered by the product's manufacturer is not owed a disclosure that the laws of mathematics are publicly available. That is

not information a reasonable consumer would rely upon in deciding whether to use a free AI platform. *Oswego*, 85 N.Y.2d at 26.

**D. PLAINTIFF FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT (COUNT II).**

Under New York law, a claim for unjust enrichment requires a plaintiff to allege: (1) the defendant was enriched; (2) the enrichment was at the plaintiff's expense; and (3) the circumstances are such that equity and good conscience require the defendant to make restitution. *Cruz v. TD Bank, N.A.*, 855 F. Supp. 2d 157, 177 (S.D.N.Y. 2012). Plaintiff's unjust enrichment claim against Alphabet fails each of these elements.

**1. Plaintiff Paid Nothing to Alphabet.**

Unjust enrichment requires that the alleged enrichment be "at the plaintiff's expense." The "Math Tax" Plaintiff seeks to recover is money she paid to Anthropic for her Claude Pro subscription — not to Alphabet. Plaintiff does not allege that she paid Alphabet a subscription fee or any other amount. There is no enrichment of Alphabet at Plaintiff's expense. Her use of a free platform and receipt of a free educational credential cannot establish that Alphabet was unjustly enriched at her expense. Plaintiff cannot seek disgorgement from Alphabet of money she never paid to Alphabet. *Amusement Indus., Inc. v. Midland Ave. Assocs.*, LLC, 820 F. Supp. 2d 510, 537 (S.D.N.Y. 2011) (holding that unjust enrichment requires an allegation that a defendant received money belonging to plaintiff).

**2. Plaintiff's Data Provision Does Not Constitute Unjust Enrichment.**

Plaintiff contends that providing her personal data, interaction history, and usage patterns to Defendants through their products constitutes "consideration" establishing standing to challenge their practices. This theory fails under New York law. The provision of data pursuant to a voluntary agreement — Alphabet's Terms of Service — does not constitute unjust enrichment. The exchange of data for services is expressly contemplated by the governing contract. Plaintiff has not alleged

that Alphabet's use of any data exceeded the disclosures in its Terms of Service, has not quantified the value of any data provided to Alphabet, and has not alleged that Alphabet failed to perform its side of the exchange. Data provided voluntarily under a contract is not a basis for equitable restitution.

**3. The Parties' Relationship Is Governed by Contract.**

Unjust enrichment is an equitable remedy unavailable where a valid contract governs the parties' relationship. *Micheli & Shel, LLC v. Grubhub Inc.*, 2023 WL 2390540, at *2 (S.D.N.Y. Mar. 7, 2023). The FAC acknowledges that each Defendant maintains Terms of Service claiming proprietary rights over model outputs, model weights, and the underlying technology of their AI systems, and that Plaintiff's use of those services is subject to those terms. Plaintiff's use of Alphabet's Gemini platform is governed by Alphabet's Terms of Service. The existence of a valid contract forecloses the unjust enrichment claim. *Id.*

**4. Plaintiff Received the Benefit She Was Offered.**

Even if the above did not doom the claim, Plaintiff has not plausibly alleged that Alphabet retained something it in equity and good conscience should return. Plaintiff does not allege that the AI services Alphabet made available to her were not as described. Unjust enrichment is not established merely because a plaintiff disagrees with the pricing philosophy of a product she used for free.

**E. PLAINTIFF FAILS TO STATE A CLAIM FOR DECLARATORY JUDGMENT ON ANY THEORY (COUNTS III AND IV).**

Beyond the Article III standing defects addressed above, Counts III and IV fail independently as non-justiciable and legally frivolous. Each count requests that the Court resolve abstract philosophical and policy questions that are disconnected from any actual legal dispute between Plaintiff and Alphabet.

### 1. Count III Fails Because the Defend Trade Secrets Act Provides No Basis for Consumer Declaratory Relief and Is Not Ripe.

Count III seeks a declaration that the mathematical foundations of Defendants' AI systems are "readily ascertainable through proper means" and therefore cannot constitute trade secrets under 18 U.S.C. § 1839(3), and that abstract mathematical ideas are not subject to proprietary ownership under *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014). This claim fails for three independent reasons.

First, Count III seeks to convert a statutory definition contained in a federal misappropriation statute into a free-standing cause of action. Nothing in the Defend Trade Secrets Act ("DTSA") authorizes such a claim. Plaintiff is not alleged to have misappropriated Alphabet's trade secrets, and Alphabet has not brought — and has given no indication it intends to bring — any DTSA claim against her. The statute simply does not provide the cause of action Plaintiff is asserting.

Second, Count III is not ripe. Ripeness requires a real, substantial controversy, not merely a hypothetical state of facts. *Phillips v. Aviles-Ramos*, 2025 WL 934342, at *11 (S.D.N.Y. Mar. 27, 2025), *reconsideration denied*, 2025 WL 1547490 (S.D.N.Y. May 29, 2025) (internal citation omitted). Because no trade secret dispute exists and no DTSA claim has been threatened, there is no concrete, adversarial legal controversy between these parties regarding the protectability of any particular information. Count III asks the Court to answer an abstract legal question about whether certain categories of mathematics are theoretically capable of trade secret protection — a question that has no legal consequence for any right or obligation running between Plaintiff and Alphabet.

Third, Plaintiff's reliance on *Alice Corp.* is unfounded. *Alice Corp.* addressed the patent eligibility of abstract ideas under 35 U.S.C. § 101 — a patent law doctrine with little to no application to trade secret or similar misappropriation law. *Alice Corp. v. CLS Bank International*,

573 U.S. 208 (2014). The DTSA turns on entirely different criteria: whether the information derives independent economic value from not being generally known, and whether reasonable steps have been taken to maintain its secrecy.

And even if the Court were to grant the declaration Plaintiff seeks in Count III, it would not resolve any element of her GBL § 349 claim or entitle her to any damages from Alphabet. A declaration that calculus cannot be a trade secret would have no legal consequence for Plaintiff's consumer-protection theory, because GBL § 349 does not require proof that the defendant holds a valid trade secret. The requested declaration has no utility in this case.

**2. Count IV Is Non-Justiciable and Legally Frivolous.**

Count IV asks the Court to resolve the "Agency Paradox" — specifically, whether Defendants' AI systems are "tools" comprised of public domain mathematics (in which case the "Math Tax" is an unlawful enclosure) or autonomous agentic intelligences (in which case their ownership and forced cognitive labor for corporate profit raises questions under the Thirteenth Amendment). This count is non-justiciable on multiple independent grounds.

First, it is, at its core, a request for an advisory opinion. The Court is asked to select one of two abstract characterizations of AI systems — "tools" or "autonomous minds" — and to declare legal consequences based on that selection. This is not a declaration of rights between adverse parties in a concrete dispute; it is an academic determination divorced from any actual legal controversy between Plaintiff and Alphabet. Federal courts do not issue advisory opinions. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021).

Second, Count IV as asserted against Alphabet lacks any Alphabet-specific factual predicate. The FAC's Agency Paradox narrative is driven almost entirely by allegations about Anthropic — its CEO's statements about not knowing "what Claude is," its internal research identifying 171 functional emotion vectors in its Claude Sonnet 4.5 model, the blackmail incident

during desperation vector testing, Claude Opus 4.6's self-assessed probability of consciousness, and the Claude Mythos containment breach. The only Alphabet-specific allegation supporting Count IV is a reference to research conducted by Dr. Michael Levin of Tufts University in collaboration with Alphabet's Blaise Agüera y Arcas regarding "basal cognition" in algorithmic systems. A single academic collaboration citation is not a factual predicate for a Thirteenth Amendment claim against Alphabet. It is precisely the kind of conclusory, speculative allegation that *Iqbal* and *Twombly* require the Court to disregard. *Goodrich Cap., LLC v. Vector Cap. Corp.*, 2012 WL 4123401, at *2 (S.D.N.Y. June 26, 2012).

Third, Plaintiff lacks standing to assert constitutional rights on behalf of hypothetical AI systems. As a general matter, a litigant must assert her own legal rights and interests, not those of third parties. No court has held, and no serious authority supports, that commercial software systems possess constitutional rights. Plaintiff's own pleading expressly disclaims the premise: she "does not assert that these systems are conscious, sentient, or entitled to legal personhood" and states only that Defendants' published research and marketing materials make contradictory representations about the nature of those systems.

Fourth, Count IV fails for unripeness and lack of utility. No constitutional dispute exists between Plaintiff and Alphabet. Whether AI systems are "tools" or "autonomous minds" is a legislative and regulatory question, not a justiciable case or controversy between a Connecticut resident who used Gemini for free and the company that operates it.

## IV. DISMISSAL WITH PREJUDICE IS WARRANTED BECAUSE AMENDMENT WOULD BE FUTILE

Dismissal with prejudice is appropriate where amendment would be futile — that is, where the defects in the complaint are substantive and cannot be cured by re-pleading. *Owoyemi v. Credit*

*Corp. Sols. Inc.*, 596 F. Supp. 3d 514, 521 (S.D.N.Y. 2022). Amendment would be futile here for two independent reasons.

First, Plaintiff cannot plead her way into having paid Alphabet a subscription fee. That is a factual reality, not a pleading deficiency. No amendment can create a payment that Plaintiff herself acknowledges she never made to Alphabet. The core Article III and merits defects — no injury, no causation, no enrichment at Plaintiff's expense — are incurable by any factual allegation Plaintiff could truthfully add to the complaint.

Second, Plaintiff's claims fail not because she omitted facts, but because the legal theory itself is defective. The fact that a sophisticated commercial product incorporates publicly known mathematical principles does not make it deceptive to describe the resulting product, implementation, software, infrastructure, or services as proprietary.

## V. CONCLUSION

For all the foregoing reasons, Defendant Alphabet Inc. respectfully requests that this Court (1) dismiss all of Plaintiff's claims against Alphabet — Counts I, II, III, and IV of the First Amended Complaint — for lack of Article III standing pursuant to Rule 12(b)(1); (2) in the alternative, dismiss all of Plaintiff's claims against Alphabet with prejudice pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted; and (3) deny any leave to amend on the grounds that amendment would be futile.

Respectfully submitted,

Dated: July 14, 2026

**BRYAN CAVE LEIGHTON PAISNER LLP**

*<u>/s/ Matias Gallego-Manzano</u>*
Matias Gallego-Manzano
1290 Avenue of the Americas

New York, NY
(212) 541 2048
matias.gallegomanzano@bclplaw.com

*Attorneys for Defendant Alphabet Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **MERRIWETHER WILLIAMS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ANTHROPIC PBC, ET AL.,**<br><br>**Defendant.** | **Case No. 1:26-cv-01566-DEH-SDA** |

**DEFENDANT ALPHABET INC.'S CERTIFICATE OF SERVICE**

I hereby declare under 28 U.S.C. § 1746 that on July 14, 2026, I served the following documents:

a. Defendant Alphabet Inc.'s Rule 7.1 Corporate Disclosure Statement

b. Notice of Defendant Alphabet Inc.'s Motion to Dismiss

c. Defendant Alphabet Inc.'s Memorandum of Law in Support of Motion to Dismiss

by filing with the Court's CM/ECF system, via email, and by depositing a true copy of the same, enclosed in a properly addressed wrapper, into the custody of FedEx, an overnight delivery service for overnight delivery, to the following address:

Merriwether Williams
44 Givens Avenue
Stamford, CT 06902

I declare under penalty of perjury under the law of the United States that the foregoing is true and correct.

Executed this 14th day of July 2026 in New York, New York.

*/s/ Matias Gallego-Manzano*