**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **MERRIWETHER WILLIAMS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ANTHROPIC PBC, ET AL.,**<br><br>**Defendants.** | **Case No. 1:26-cv-01566-DEH-SDA** |

**DEFENDANT ALPHABET INC.'S REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS


**TABLE OF AUTHORITIES** ........ ii

**I. PRELIMINARY STATEMENT** ........ 1

**II. ARGUMENT** ........ 2

**A. PLAINTIFF STILL LACKS ARTICLE III STANDING AS TO ALPHABET.** ........ 2

**B. PLAINTIFF STILL FAILS TO STATE A CLAIM FOR VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349 (COUNT I).** ........ 3

**a. There is no injury attributable to Alphabet.** ........ 4

**b. No materially misleading Alphabet statement is properly pleaded.** ........ 5

**c. No duty to disclose that products rest on public science.** ........ 5

**C. PLAINTIFF'S UNJUST ENRICHMENT (COUNT II) SHOULD BE DISMISSED AS CONCEDED.** ........ 6

**D. COUNTS III AND IV REMAIN NON-JUSTICIABLE REQUESTS FOR ADVISORY OPINIONS.** ........ 6

**III. PLAINTIFF CANNOT AMEND HER COMPLAINT THROUGH AN OPPOSITION BRIEF** ........ 8

**IV. DISMISSAL WITH PREJUDICE REMAINS WARRANTED.** ........ 9

**V. CONCLUSION** ........ 9

## TABLE OF AUTHORITIES


***Page(s)***

***CASES***

*DoubleLine Capital LP v. Odebrecht Fin., Ltd.*,
323 F. Supp. 3d 393 (S.D.N.Y. 2018) .... 6

*Dwyer v. Allbirds, Inc.*,
598 F. Supp. 3d 137 (S.D.N.Y. 2022) .... 5

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .... 3

*Marshall v. N.Y. State Public High Sch. Athletic Ass'n*,
374 F. Supp. 3d 276 (W.D.N.Y. 2019) .... 6

*Norton v. Town of Brookhaven*,
33 F. Supp. 3d 215 (E.D.N.Y. 2014) .... 3

*Off-White LLC v. Paige, LLC*,
2017 WL 3605625 (S.D.N.Y. Aug. 1, 2017) .... 7

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
85 N.Y.2d 20 (1995) .... 4, 7

*Russomanno v. Murphy*,
2011 WL 609878 (S.D.N.Y. Feb. 16, 2011) .... 8

*Spirit Realty, L.P. v. GH & H Mableton, LLC*,
227 F. Supp. 3d 291 (S.D.N.Y. 2017) .... 7

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .... 7, 9

*United Fin. Cas. Co. v. Paddon*,
248 F. Supp. 3d 368 (N.D.N.Y. 2017) .... 7

*Velvet Underground v. Andy Warhol Found. For the Visual Arts, Inc.*,
890 F. Supp. 2d 398 (S.D.N.Y. 2012) .... 7

***US CONSTITUTIONAL PROVISIONS***

U.S. Const. Art. III .... 2, 3, 8, 9

***STATUTES***

18 U.S.C. § 1839(3) .... 7

***FEDERAL RULES***

Fed. R. Civ. P. 12(b)(1) .......... 9

Fed. R. Civ. P. 12(b)(6) .......... 8

Fed. R. Civ. P. 15 .......... 8

## I. PRELIMINARY STATEMENT

Plaintiff's opposition confirms why this action must be dismissed: Plaintiff lacks standing as the only economic injury alleged in this case arose from payments Plaintiff made to Anthropic, not to Alphabet. Plaintiff expressly acknowledges that "the subscription premium was paid to Anthropic, not to Alphabet," concedes that she seeks no disgorgement, restitution, or damages from Alphabet, and abandons Count II against Alphabet altogether. As Plaintiff has admitted she has not suffered any injury traceable to Alphabet, she lacks standing and this Court should dismiss the Complaint for lack of subject matter jurisdiction.

Plaintiff also has not stated a plausible legal claim. She claims Alphabet misleadingly claims math "ingredients" used in its AI products is "proprietary", but does not identify any such statement or present any plausible theory for why Alphabet is liable to her if it did. To the contrary, Plaintiff repeatedly acknowledges that how Alphabet uses the math "ingredients", i.e, trained models, engineering implementations, deployment infrastructure, and other aspects of Alphabet's AI systems, is, should and may be lawfully proprietary. As the response makes clear, Plaintiff's theory here is simply her disagreement with how technology companies claim their AI products are "proprietary" in the abstract, and is not a plausible allegation that Alphabet made a materially false or misleading statement that misled her and consumers or they are withholding publicly available knowledge from the public.

Although futile, Plaintiff attempts to supplement the First Amended Complaint ("FAC") with an extensive collection of new material never pleaded in the operative complaint, including purported excerpts from Google's Terms of Service, technical documentation, benchmark results, media interviews, and foreign court rulings. This noise is irrelevant and immaterial: a motion to dismiss tests the sufficiency of the complaint that was filed, not new facts and reformulated theories introduced for the first time in opposition.

Ultimately, the opposition confirms that Plaintiff's dispute is not with any injury inflicted by Alphabet, but with Plaintiff's disagreement over how technology companies describe artificial intelligence and intellectual property. Article III does not authorize federal courts to resolve that disagreement in the abstract. Nor does the Declaratory Judgment Act empower courts to issue advisory opinions concerning hypothetical trade-secret disputes or competing philosophical descriptions of AI systems. Because Plaintiff identifies no injury traceable to Alphabet, no actionable misrepresentation by Alphabet, and no justiciable controversy between these parties, the First Amended Complaint should be dismissed with prejudice.

## II. ARGUMENT

### A. PLAINTIFF STILL LACKS ARTICLE III STANDING AS TO ALPHABET.

Plaintiff's opposition resolves the standing question against her in her own words:

> "Plaintiff states plainly what Alphabet is right about: the subscription premium was paid to Anthropic, not to Alphabet."

(Opp. (Dkt. 97) at 6.) That admission alone resolves the threshold traceability and redressability defects as to Alphabet. It confirms that the only economic injury Plaintiff alleges arose from payments made to Anthropic. It also defeats redressability. Because Plaintiff did not pay Alphabet, no order directed at Alphabet would return the subscription premium she alleges she paid to Anthropic. Plaintiff further confirms she "seeks no disgorgement, restitution, or damages from Alphabet," and that Count II is not pressed against Alphabet at all. (*Id.*) Having conceded away any monetary injury traceable to Alphabet, Plaintiff pivots to two theories that fare no better.

First, Plaintiff argues that traceability does not require a payment and that Alphabet's own conduct - publishing the Transformer architecture, monetizing it at scale, and representing its technology as proprietary - independently establishes a chain of causation running to her. (*Id.*) But this reframing does not identify any concrete injury Plaintiff herself suffered from Alphabet's

conduct. She does not allege she paid a premium to Alphabet, that Alphabet's free Gemini platform cost her money, or that her AI Essentials credential caused her financial harm. A generalized allegation that an industry-wide practice exists does not substitute for the individualized, concrete injury Article III requires from this defendant. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Second, Plaintiff argues that Counts III and IV require no payment because they seek only declaratory relief, and that an actual controversy exists because Alphabet's Terms of Service purportedly assert trade-secret status over its technology while Plaintiff disputes that characterization. (Opp. at 8.) Even accepting that framing, a live, adversarial controversy under the Declaratory Judgment Act still requires that Plaintiff show a real and immediate injury or threat of injury to herself, not an abstract disagreement about how a defendant labels its intellectual property in a form contract she was never charged a premium under. *See Norton v. Town of Brookhaven*, 33 F. Supp. 3d 215, 240-41 (E.D.N.Y. 2014). Plaintiff does not allege that Alphabet has threatened her with a trade-secret misappropriation claim, that she has been denied any benefit because of Alphabet's proprietary characterization (like also using the basic math "ingredients" she decries Alphabet used), or that the label has ever been applied against her in any concrete way.

The Opposition confirms that this case is not about an injury caused by Alphabet. It is about Plaintiff's disagreement with how technology companies describe artificial intelligence and intellectual property. Article III does not permit federal courts to adjudicate that disagreement in the abstract.

### B. PLAINTIFF STILL FAILS TO STATE A CLAIM FOR VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349 (COUNT I).

Plaintiff's General Business Law ("GBL") § 349 claim rests on the same infirmities identified in Alphabet's opening brief. GBL § 349 requires that Plaintiff plausibly allege consumer-

oriented conduct, a materially misleading representation, and injury caused by that representation. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995).

**a. There is no injury attributable to Alphabet.**

Plaintiff's opposition does not dispute that the $8.00 premium she alleges was paid to Anthropic. That defect alone is sufficient to dismiss the § 349 claim. Her attempt to recast the injury as the payment of a "subscription premium she would not have paid absent the 'proprietary' representation" does not change which company received that payment. (Opp. at 5.) Plaintiff's opposition repeatedly references a price "premium," but continues to identify only Anthropic's subscription fee. (*See id.* at 6-8, 10-11, 13, 17, 20-22.) The opposition still does not identify any premium that Plaintiff paid to Alphabet. A GBL § 349 claim against Alphabet requires that Alphabet's own conduct caused Plaintiff's injury; a premium paid to a co-defendant, for a co-defendant's product, cannot satisfy that element against Alphabet, regardless of how the industry's practices are characterized collectively.

Even if the Court were to consider the Terms-of-Service language identified for the first time in the Opposition, the result is unchanged. The cited language states only that Alphabet's services and machine-learning models contain proprietary information and trade secrets. (*Id.* at 12.) It nowhere states that publicly known mathematics is proprietary. Thus, even accepting the new materials on their own terms, Plaintiff still fails to identify a materially misleading statement. Those propositions are entirely consistent with Plaintiff's own admission that trained models, engineering implementations, and deployment infrastructure may be proprietary. The cited language therefore does not support Plaintiff's theory that Alphabet represented calculus, linear algebra, probability theory, or any other public-domain discipline as proprietary, whether or not the Court considers that language at all.

**b. No materially misleading Alphabet statement is properly pleaded.**

The FAC's own concessions remain fatal to the claim independent of the Terms-of-Service point above. Plaintiff acknowledges in the FAC that Defendants have made "significant, multi-billion-dollar investments in hardware and infrastructure" and that "engineering choices made to scale public domain mathematics . . . are implementation decisions." (FAC (Dkt. 40), ¶ 3.) A finished commercial AI product that incorporates such engineering, together with training pipelines, model weights, deployment infrastructure, and fine-tuning choices, is accurately described as proprietary. Plaintiff's opposition concedes as much, agreeing that "a specific trained model may be held secret the way Coca-Cola holds its recipe" and that "the engineering layered on the public foundation is Alphabet's to build and to charge for." (Opp. at 4, 9.) Once Plaintiff concedes that the finished, trained, deployed product may lawfully be called proprietary, her § 349 claim collapses, because the only representation properly before the Court is Alphabet's description of its finished product - Gemini - as proprietary, not a representation that its mathematics textbook inputs are secret.

**c. No duty to disclose that products rest on public science.**

As explained in Alphabet's opening brief, no principle of consumer-protection law requires a technology company to disclose that its product employs publicly available scientific or mathematical principles. Automobile manufacturers need not disclose that Newtonian mechanics is in the public domain; GPS providers need not disclose that Einstein's physics is freely available. The FAC's own theory - that the word "proprietary," standing alone, creates an actionable false impression that a product's underlying scientific building blocks are secret - has no support in the pleaded facts and does not become plausible because Plaintiff now points, for the first time, to specific contract language never pleaded in the FAC. *See Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d

137, 151 (S.D.N.Y. 2022) ("There is no obligation under GBL § 349 … to provide whatever information a consumer might like to know.").

### C. PLAINTIFF'S UNJUST ENRICHMENT (COUNT II) SHOULD BE DISMISSED AS CONCEDED.

Plaintiff's opposition states plainly that she "does not press an unjust-enrichment claim [Count II] against Alphabet" and does "not oppose dismissal of Count II as to Alphabet." (Opp. at 16.) A plaintiff who fails to oppose dismissal of a claim, or affirmatively abandons it, is deemed to have conceded the point. *See DoubleLine Capital LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 449 (S.D.N.Y. 2018) ("Plaintiffs do not oppose this argument and have, therefore, abandoned their … claim[.]").

Alphabet respectfully requests that the Court dismiss Count II against Alphabet as abandoned, without need to reach the substantive arguments in Alphabet's opening brief.

### D. COUNTS III AND IV REMAIN NON-JUSTICIABLE REQUESTS FOR ADVISORY OPINIONS.

Plaintiff's opposition confirms that Count III seeks a declaration under the Declaratory Judgment Act applying the Defend Trade Secrets Act's definitional standard, not a DTSA cause of action itself. That does not cure the justiciability defect. The Declaratory Judgment Act requires an actual, live controversy of sufficient immediacy between the parties, not an invitation for the Court to opine on the abstract trade-secret status of academic disciplines in the absence of any threatened or pending misappropriation dispute. *Marshall v. N.Y. State Public High Sch. Athletic Ass'n*, 374 F. Supp. 3d 276, 285-86 (W.D.N.Y. 2019). Alphabet has not asserted, and has given no indication it intends to assert, any trade-secret claim against Plaintiff.

Plaintiff's theory would allow any consumer to seek a declaration concerning the hypothetical trade-secret status of any information used in a commercial product, even where no trade-secret controversy exists. The Declaratory Judgment Act does not authorize federal courts to

issue abstract legal advice on demand. *Spirit Realty, L.P. v. GH & H Mableton, LLC*, 227 F. Supp. 3d 291, 297 (S.D.N.Y. 2017) ("In the context of an action for a declaratory judgment, a court may not issue such a judgment 'when the parties are asking for an advisory opinion[.]'"). Nor does it permit litigants to obtain declarations regarding hypothetical disputes that neither party contends are likely to arise. *Off-White LLC v. Paige, LLC*, 2017 WL 3605625, at *3 (S.D.N.Y. Aug. 1, 2017) ("The case before this Court similarly presents what is, at the present moment, a hypothetical dispute, and the Court … therefore concludes that there is not presently a controversy for which the granting of declaratory relief would be appropriate[.]"). That is not a judicial determination of legal rights between adverse parties; it is a request for generalized legal guidance. A generalized objection to boilerplate contractual language describing a company's intellectual property, with no live dispute over any specific claimed secret and no consequence for any right or obligation running between these parties, does not present the kind of concrete adversity the Declaratory Judgment Act requires. *See Velvet Underground v. Andy Warhol Found. For the Visual Arts, Inc.*, 890 F. Supp. 2d 398, 403-04 (S.D.N.Y. 2012). Nor would the requested declaration resolve Plaintiff's § 349 claim, because § 349 liability does not turn on whether Alphabet holds a valid trade secret under 18 U.S.C. § 1839(3). *See Oswego*, 85 N.Y.2d at 25 (listing elements of § 349 claim).

What remains, by Plaintiff's own description, is a request that the Court adjudicate an internal "contradiction" in how a corporate family discusses its research and products across different contexts. That is a request for an advisory opinion on how a company should talk about its own technology, not a case or controversy between adverse parties with concrete stakes. *See United Fin. Cas. Co. v. Paddon*, 248 F. Supp. 3d 368, 372-73 (N.D.N.Y. 2017) ("asking the Court to issue an advisory opinion … is not justiciable and does not constitute a case or controversy[.]") Federal courts do not sit to referee consistency in corporate messaging. *TransUnion LLC v.*

*Ramirez*, 594 U.S. 413, 415 (2021) ("an asserted informational injury that causes no adverse effects does not satisfy Article III").

## III. PLAINTIFF CANNOT AMEND HER COMPLAINT THROUGH AN OPPOSITION BRIEF

On a motion under Rule 12(b)(6), the Court's review is confined to the four corners of the complaint, documents incorporated by reference, matters of which judicial notice may properly be taken, and documents the plaintiff relied on in bringing suit and that are integral to the complaint. *Russomanno v. Murphy*, 2011 WL 609878, at *3 (S.D.N.Y. Feb. 16, 2011). The Opposition does more than cite new materials; it materially reframes the operative claims. Plaintiff's opposition introduces, for the first time, purported quotations from Google's Terms of Service ("Don't abuse our services," "Software in Google services," a warranty disclaimer); Google Cloud/Vertex AI "grounding" documentation; the results of DeepMind's FACTS Benchmark Suite; a November 2025 BBC interview of Sundar Pichai; an April 2025 CBS "60 Minutes" segment featuring Demis Hassabis; a preliminary ruling of the Regional Court of Munich I concerning AI Overviews; and a Delaware Superior Court order. (Opp. at 4, 12, 14-16, 21.) None of this material appears in the FAC, and none of it was incorporated by reference or attached to the pleading Alphabet moved to dismiss.

The Court should disregard the newly submitted materials and reformulated theories when determining whether the FAC states a claim. If Plaintiff contends these materials support her claims, the proper procedure is a motion for leave to amend under Rule 15, supported by a proposed pleading Alphabet can test on a complete record. Plaintiff cannot rely on an opposition brief to treat unauthenticated excerpts and foreign, non-final rulings as well-pleaded facts entitled to a truth-presumption.

## IV. DISMISSAL WITH PREJUDICE REMAINS WARRANTED.

The Opposition confirms that Plaintiff's dispute is not with any injury inflicted by Alphabet, but with Plaintiff's disagreement over how technology companies describe artificial intelligence and intellectual property. Article III does not authorize federal courts to resolve that disagreement in the abstract. *TransUnion LLC*, 594 U.S. at 423-24. That reality is the reason further amendment would be futile.

Plaintiff has already amended once, and her Opposition identifies no additional facts that could cure the identified defects. Indeed, the Opposition effectively previews the facts Plaintiff would add in a further amendment, including Terms-of-Service language, technical documentation, public interviews, benchmark results, and foreign court decisions. (Opp. at 4, 12, 14-16, 21.) Even accepting those materials, the defects identified above remain. The list of remedies Plaintiff proposes in the final section of her opposition - itemized pricing, disclosure of the mathematical "foundation," configuration changes to Gemini's outputs, and an accounting - are all things she says she would seek if she had standing and a viable claim; they are not new facts that cure the standing and pleading defects Alphabet has identified. (Opp. at 21-22.) Where, as here, the defects are legal and structural rather than the product of inartful drafting, leave to amend should be denied as futile.

## V. CONCLUSION

For the foregoing reasons and those set forth in Alphabet's opening brief, Defendant Alphabet Inc. respectfully requests that the Court dismiss all of Plaintiff's claims against Alphabet - Counts I, II, III, and IV of the First Amended Complaint - with prejudice, pursuant to Rules 12(b)(1) and 12(b)(6).

Respectfully submitted,

Dated: August 14, 2026

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ Matias Gallego-Manzano*
Matias Gallego-Manzano
1290 Avenue of the Americas
New York, NY
(212) 541-2048
matias.gallegomanzano@bclplaw.com

*Attorneys for Defendant Alphabet Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **MERRIWETHER WILLIAMS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ANTHROPIC PBC, ET AL.,**<br><br>**Defendant.** | **Case No. 1:26-cv-01566-DEH-SDA** |

**DEFENDANT ALPHABET INC.'S CERTIFICATE OF SERVICE**

I hereby declare under 28 U.S.C. § 1746 that on August 14, 2026, I served the following documents:

a. Defendant Alphabet Inc.'s Reply Memorandum of Law in Further Support of Motion to Dismiss

by filing with the Court's CM/ECF system, via email, and by depositing a true copy of the same, enclosed in a properly addressed wrapper, into the custody of FedEx, an overnight delivery service for overnight delivery, to the following address:

Merriwether Williams
44 Givens Avenue
Stamford, CT 06902

I declare under penalty of perjury under the law of the United States that the foregoing is true and correct.

Executed this 14th day of August 2026 in New York, New York.

*/s/ Matias Gallego-Manzano*